FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

OCT 1 1 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A 'WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION )     No. 4:18 MJ 347 DDN
INFORMATION, CELL SITE )
INFORMATION, AND OTHER )          **FILED UNDER SEAL**
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
(636) 234-4893. )

## **AFFIDAVIT**

Larson Harris, being duly sworn, deposes and says that he is a Special Agent with the Drug

Enforcement Administration of the United States Department of Justice, St. Louis, Missouri, duly

appointed according to law and acting as such.

### **Introduction**

I am a Special Agent of the Drug Enforcement Administration (DEA), United States

Department of Justice (DOJ). As such, I am an investigative and law enforcement officer of the

United States (U.S.) within the meaning of Title 18, U.S. Code, Section 2510 (7), who is

empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title

18, U.S. Code, Section 2516.

I have been a Special Agent with the DEA since March 2017. I am currently assigned to

the St. Louis Field Division (FD), Task Force Group 31. During the beginning of my career, I

successfully completed the rigorous 20 week long DEA Basic Agent Training Academy located

in Quantico, Virginia. At the Academy, I received extensive training in the investigation of

narcotics related offenses concerning violations of the Controlled Substance Act contained within the Title 21, United States Code, including the illegal transportation, distribution, and sale of controlled substances. I have learned to identify and recognize commonly and infrequently used tactics of illicit drug traffickers and various methods of techniques to eliminate the illegal flow of narcotics throughout United States. During my training in the Academy, I was also taught how to recognize the trends drug traffickers use to launder their drug proceeds and routes to exemplify to expose these acts. I have learned and had extensive training on federal criminal law and more so pertaining to those laws relating to narcotics. I was also taught and trained on the recognition and testing of the vast variety of different narcotics present in the United States that are being illegally used, possessed, transported, and sold.

Upon my completion of the DEA Basic Training Academy, I was temporarily assigned to the Houston Division Office in the Enforcement Group D25. Through my short period assigned to this group, I conducted and assisted in many operations that were implemented to stop the drug and money flow of known drug traffickers in the region. I assisted in the mobile and electronic surveillance, Title-III wiretap communications, multiple documented narcotics arrest, drug traffickers' money intercepts, interview and questioning of witnesses and sources, and the execution of search and arrest warrants. In July 2017, I reported to the DEA St. Louis Field Division Office Task Force Group 31, where I am currently assigned.

Prior to my commission as a DEA Special Agent, I was employed as a police officer with the Houston Police Department from May 2013 to October 2016. At the Houston Police Department, I was assigned as a patrol officer for the first year of my career. As a patrol officer I responded to emergency calls and assisted complainants while at the scene. I wrote numerous

2

reports and made several city arrests on criminal activities. In June 2014 through October 2016, I was assigned to the Gang Task Force Unit within the Houston Police Department. In this unit, we were assigned to conduct street level investigations of local Gang members and to conduct proactive police work to make felonious arrest. I conducted several undercover operations which lead to several arrest and significant investigative information. I have participated in countless drug investigations which resulted in numerous arrest and narcotics, money, and asset seizures. I have exemplified knowledge of the street terms of certain narcotics and the way drug traffickers attempt to conceal their drugs and money proceeds. I have an abundant deal of knowledge and have encountered drugs such as cocaine/crack, heroin, MDMA, methamphetamine, marijuana and other controlled substances. I have used pole cameras and plain clothes surveillance of targets believed to be involved in illegal criminal drug activity. Currently, I am a part of an experience team in the St. Louis Division Office in Task Force Group 31 that has participated in disrupting and dismantling several drug trafficking organizations.

The facts alleged in this affidavit come from my own investigation, my training, experience and information obtained from other investigators and witnesses.    As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of the my knowledge regarding this matter.

Upon information and belief, and as explained in greater detail below, the AT&T Wireless cellular telephone bearing number **(636) 234-4893** (hereinafter the **"subject cellular telephone"**) has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1), 846 and other

offenses of Federal law (hereinafter referred to as "the subject offenses"), by Joshua SPENCER, and others known and unknown.

The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information, including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the location of the **subject cellular telephone**.

Your affiant further states that there is probable cause to believe that the location information associated with the **subject cellular telephone** will lead to evidence of the aforementioned subject offenses as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes. The information in the Affidavit is based on my personal involvement in the investigation of this case, confidential source information, records, my experience and training, and the experience of other agents. Because of this Affidavit's limited purpose, it does not contain all of the facts known to me or other law enforcement officers about the investigation. Specifically, I have set forth only those facts that I believe are necessary to establish the required foundation for an order authorizing the installation of a tracking device.

### Investigation and Probable Cause

Presently, your affiant is a member of an investigative team of experienced DEA Special Agents and Task Force Officers who are investigating a significant crystal methamphetamine trafficking organization based around the area of Franklin County, Missouri. This investigation is

4

in the initial phases and is focused on the crystal methamphetamine drug trafficking organization of Joshua SPENCER. SPENCER has a criminal record which includes arrest and/ or convictions of burglary 2nd degree, theft, possession of a drug paraphernalia, possession of a controlled substance, and unlawful possession of a firearm.

During the month of August of 2018, investigators with the Multi- County Narcotics and Violent Crimes Enforcement Unit (MCNVCEU) interviewed MCNVCEU Confidential Source 18-009 (hereinafter referred to as "CS")[1], who provided information regarding the drug trafficking organization of Joshua SPENCER. The CS stated that he/she has grown up with SPENCER and has known him for many years. The CS stated that SPENCER has been known to sell crystal methamphetamine through Franklin and Jefferson County, Missouri. The CS stated SPENCER is also known to have multiple firearms. The CS stated he/she is able to purchase ounce quantities of crystal methamphetamine from SPENCER.

On September 21, 2018, the CS informed MCNVCEU investigators that he/she had a short text message chain with SPENCER about buying an ounce of heroin. MCNVCEU investigators obtained this text message conversation and observed as the CS was texting SPENCER on the **subject cellular telephone** and detailed as below:

CS: "Since im coming to you would you be able to get more than the half o"

SPENCER: "Yes". "I have a oz"

CS: "Okay how much?"

---

[1] A Confidential Source has been cited in this Affidavit and has been utilized during this investigation ("CS"). The CS has been working with the MCNVCEU as a newly approved informant under MCNVCEU CS_18-009 and has been an active informant for MCNVCEU for approximately one month. The CS has provided information to law enforcement which has been independently corroborated and deemed to be true and reliable. The CS is cooperating in exchange for monetary compensation.

SPENCER: I'm need 800". "What's up"

The CS informed MCNVCEU investigators that "o" and "oz", which are contained in this text message chain, refer to "ounce". The CS stated he/she was asking SPENCER if he had an ounce of crystal methamphetamine and if so, at what price SPENCER would sell that ounce of crystal methamphetamine to the CS.

On October 1, 2018, investigators with the MCNVECU, along with investigators with the St. Louis Drug Enforcement Task Force Group 31, conducted an operation utilizing the CS to purchase an ounce of crystal methamphetamine from SPENCER. The investigative team met with the CS at a confidential location and advised the CS to place a phone call to SPENCER at the **subject cellular telephone** in the presence of Investigators. During the call, SPENCER arranged to meet with the CS at the McDonalds restaurant located at 12 Hilltop Village Center Dr. Eureka, MO 63025 to sell the CS an ounce of crystal methamphetamine for $800.00. The investigative team searched the CS's person and vehicle for the presence of any contraband and confirmed none was present prior to the controlled buy. Members of the investigative team supplied the CS with $800.00 of pre-recorded DEA Official Advance Funds and equipped the CS with a covert audio transmitting/recording device. The CS then proceeded to the meet location. As the CS arrived at the McDonalds located at 12 Hilltop Village Center Dr. Eureka, MO 63025 the CS contacted SPENCER on the **subject cellular telephone**. Investigators heard this call placed on the covert transmitter device and later confirmed the CS had placed the call to the **subject cellular telephone** by viewing the call log on the CS's cellular telephone. During this call, SPENCER informed the CS to go to the other McDonalds located at 5699 Fox Creek Road, Pacific, MO 63069 to conduct the deal. The CS then departed to that location to meet SPENCER.

6

The CS arrived and parked in front of the McDonalds restaurant at 5699 Fox Creek Road. The CS placed another phone call to SPENCER, and SPENCER stated he was coming towards the CS.   Investigators conducting surveillance observed SPENCER exit the McDonalds and enter the CS's vehicle. The CS later informed investigators that SPENCER entered the CS's vehicle and retrieved the ounce of crystal methamphetamine from his inside the front of his pants through his zipper. The CS handed SPENCER the $800.00 DEA Official Advance Funds and in exchange he placed the ounce of crystal methamphetamine on the middle console.   Investigators observed SPENCER exit from CS's vehicle and enter back into the gas station that is attached to the McDonalds. Investigators then observed SPENCER enter a white Chevrolet Impala bearing the Missouri plate number DR5C5U and depart the area alone. Investigators initiated mobile surveillance on SPENCER. Investigators trailed SPENCER and observed SPENCER conduct counter surveillance by making several random U-turns in an attempt to check his rear for law enforcement who may be following him.   In the experience of the investigative team, it is common amongst drug traffickers who may be driving in possession of narcotics or proceeds from narcotics. Investigators followed SPENCER to a trailer home located at 6 Terrance Hill Estates Labadie, MO 63055 and observed SPENCER enter into this residence.

Investigators met with the CS at a neutral location after conclusion of this operation and seized the ounce of crystal methamphetamine the CS obtained from SPENCER. Investigators again searched the CS's person and vehicle for any contraband and confirmed none was present after the completion of this operation except for the ounce of crystal methamphetamine seized from the CS. MCNVECU investigators field tested the suspected ounce of methamphetamine and received a positive return for the presence of methamphetamine.

7

Your affiant believes that the above –referenced facts constitute probable cause to believe that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21 U.S.C. §§ 846, 841(a)(1) (the subject offenses). It is critical that the investigative team be able to locate and monitor the movements of the **subject cellular telephone** thereby assisting in the identification of the co-conspirators and the seizure of narcotics. This investigative technique would allow investigators to locate SPENCER as he engages in drug trafficking activities in the Eastern District of Missouri. More specifically, the ability to locate the **subject cellular telephone** by way of electronic surveillance (as opposed to physical surveillance) would significantly decrease the likelihood that the surveillance would be detected, thereby compromising.

The investigation has clearly demonstrated that the **subject cellular telephone** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (the subject offenses). Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Investigative Considerations and Techniques

Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A.     Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system. Such information can include log files and messaging logs showing all activity on a particular

8

account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.      Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received.   For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact.   Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities.   Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.      Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.      Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.   A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received.   The provider could have this information because each cellular device has one or more unique

9

identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

E.     Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber.   In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed).   The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

F.     Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell site location records.   This information is sometimes referred to as E-911 phase II data, GPS data

10

or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

In order to locate the **subject cellular telephone** and monitor the movements of the phone, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel the Service Provider, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of the requested investigative techniques to

11

daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

The monitoring of the location of the **subject cellular telephone** by one of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Conclusion

Based on the above information, there is probable cause to believe that the **subject cellular telephone** is being used to promote and facilitate a conspiracy to distribute narcotics and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of the **subject cellular telephone** will lead to the relevant evidence concerning violations of Title 21, United States Code, Section(s) 841(a)(1) and 846.

10 - 11 - 2018
DATE

Larson Harris
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this ___11 th___ day of October, 2018.

DAVID D. NOCE
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

12

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### AT&T

and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | Sprint |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator | Start Wireless |
| Airvoice Wireless | Fibernit Comm | Telecommunications | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| d/b/a Verizon Wireless | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | Verizon Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | Verizon Wireless |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River | RCN Telecom | Westlink Communications |
| Commercial Communications | Communications | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone | QWEST Communications | Windstream Communications |
| Cox Communications | Company | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | Metro PCS | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

## ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR
## ELECTRONIC COMMUNICATIONS          Last Update: 06/21/2018